IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA          :
                                  :
    vs.                           :
                                  :
                                  :   CRIMINAL NO. 1:CR-10-0298
BLAINE R. HANDERHAN,              :
              Defendant           :     (Judge Caldwell)
                                  :
                                  :
                                  :

M E M O R A N D U M

I. *Introduction*

Defendant, Blaine R. Handerhan, has filed a pro se motion under 28 U.S.C. § 2255 to vacate his conviction and sentence.  Defendant was named in a two-count indictment.  Count One charged him with knowingly distributing, and attempting to distribute, child pornography in violation of 18 U.S.C. § 2252A(a)(2).  Count Two charged him with knowingly possessing child pornography in violation of 18 U.S.C. § 2252A(a)(5).

Defendant and the government entered into a written plea agreement in which the government agreed to dismiss Count One and Defendant agreed to plead guilty to Count II.  Defendant was sentenced on Count Two to ninety-six months' imprisonment.  The sentence also required Defendant to pay $75,000 in restitution.  Defendant appealed, raising only sentencing issues.  The sentence was affirmed on appeal.  *United States v. Handerhan*, 739 F.3d 114 (3d Cir. 2014).

Defendant raises seven claims, five in his 2255 motion and two in a supplemental brief.  The 2255 motion raises the following five claims.  First, he was

constructively denied counsel because his lawyer had a brain tumor, diagnosed after counsel had begun representing Defendant and after Defendant had pled guilty.[1] Second, counsel was ineffective in failing to file a motion to suppress the evidence seized from Defendant's house as a result of an illegal search warrant.  Third, counsel was ineffective in failing to file a motion to suppress statements he allegedly made after he was taken into custody during the search of his residence when police did not give him his *Miranda* warnings.  Fourth, counsel was ineffective in failing to file a motion to dismiss the indictment on the bases of pre-indictment delay in bringing the prosecution and on a violation of the Speedy Trial Act.  Fifth, counsel was ineffective in not investigating whether Defendant's mental illness prevented him from being able to knowingly or intentionally form the criminal intent necessary to commit the charged offenses.

In the supplemental brief (Doc. 110), Defendant adds his sixth and seventh claims.  Defendant's sixth claim is that counsel was ineffective in misleading him "into agreeing to restitution when restitution may not have been an element of the crime." (*Id.*, ECF p. 2).  Defendant alleges that counsel never advised him "that restitution was an element of the penalty" for his offense.  (*Id.*).  Defendant's seventh claim is that counsel was ineffective in failing to argue that he was incompetent to assist in his own defense, stand trial, or enter a guilty plea.

---

[1]    Counsel was Matthew R. Gover.  His illness was fatal.  Gover represented Defendant from indictment through the guilty plea.  Gover's partner, Brian W. Perry, then represented Defendant through sentencing and direct appeal.

II. *Discussion*

      A. *Counsel's Brain Tumor Did Not Result in a Constructive*
        *Denial of Counsel Requiring that Prejudice Be Presumed*

      Defendant's first claim is that he was constructively denied counsel because his lawyer had a brain tumor, diagnosed after counsel had begun representing Defendant and after Defendant had pled guilty.  Defendant asserts the cancer would have affected counsel's performance before it was diagnosed.  Defendant alleges that brain tumors are progressive diseases that develop over time and cause "memory loss, impaired concentration, problems with reasoning, [and] changes in personality and behavior."  (Doc. 93, 2255 motion, p. 3).  Defendant alleges that "[v]ery early in his representation" counsel "did exhibit these symptoms and behavior."  (*Id.*).  Defendant thus asserts prejudice should be presumed from his counsel's illness.

      Claims of ineffective assistance of counsel are governed by *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).  *Strickland* sets forth a two-prong test to establish ineffectiveness.  First, counsel's performance must be deficient.  *Jacobs v. Horn,* 395 F.3d 92, 102 (3d Cir. 2005)(citing *Strickland*).  Second, counsel's deficient performance must have prejudiced the defense.  *Id.* (quoting *Strickland*).  A petitioner must "show 'that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'"  *Id.* at 105 (quoting *Strickland*).

However, in "cases of actual or constructive denial of assistance of counsel altogether," a defendant does not have to show prejudice. Instead, "prejudice may be presumed . . . ." *Palmer v. Hendricks*, 592 F.3d 386, 398 (3d Cir. 2010)(quoting *Strickland*)(internal quotation marks and brackets omitted).

We disagree with Defendant that his counsel's brain tumor means that he was constructively denied counsel. We believe that a brain tumor does not necessarily impair a person's cognitive abilities to such an extent that we must find constructive denial of counsel. Instead, Defendant must still show specific instances of conduct that prejudiced the defense, either stemming from the tumor or based on some other reason.

We support our ruling with *Smith v. Ylst*, 826 F.2d 872 (9th Cir. 1987). In *Ylst*, the defendant claimed he was constructively denied counsel based on his attorney's mental illness. The Ninth Circuit rejected the argument, stating: "Rather than attempt to identify mental illnesses that would presumptively disable an attorney from conducting a criminal defense we believe that it is more prudent to evaluate the attorney's actual conduct of a trial in light of allegations of mental incompetence." *Id.* at 876. *See also Dows v. Wood*, 211 F.3d 480, 485-86 (9th Cir. 2000)(defense counsel's diagnosis of Alzheimer's disease eighteen months after trial did not establish constructive denial of counsel because the disease varies in its manifestations, and the better course was to examine counsel's actual performance); *Jackson v. United States*, 1994 WL 375427, at *3 (7th Cir. 1994)(nonprecedential)(defense counsel's drug use during trial did not constitute per se ineffectiveness)(citing *Ylst*).

-4-

Defendant must therefore support his claims of ineffectiveness with specific instances of his attorney's conduct claimed to be deficient and which resulted in prejudice.

B. *The Claim that Counsel Was Ineffective in Failing to Obtain the Three Experts' Reports Before Defendant Entered His Guilty Plea*

As part of his first claim concerning constructive denial of counsel, Defendant does make a specific claim of ineffectiveness, that counsel was ineffective in failing to obtain three experts' reports before Defendant pled guilty. Defendant asserts that these experts, one in computer forensics and two in mental health, would have created reasonable doubt that Defendant was guilty of the charged offenses.

The government counters that examination of the opinions of the mental-health experts reveals that their reports would not have exonerated Defendant. The government cites the sentencing transcript. As for the computer expert, the government points out that counsel did find a computer expert and did seek several continuances of trial for the purpose of having that expert examine the evidence.[2] If the expert had found any evidence favorable to Defendant, counsel would have presented it.

We agree with the government. The report of one of the mental-health experts is attached to Defendant's sentencing memorandum and the report of the other is attached to the presentence report. These reports would not have established

---

[2]   See Docs. 22, 27, and 29.

reasonable doubt, and Defendant does not explain how they would have.[3]  In fact, these reports indicate Defendant admits he downloaded child pornography.  Second, as to the computer expert, Defendant does not provide us with a copy of that expert's report nor does he describe the substance of the report.  We therefore cannot evaluate the merits of the claim as it relates to this expert and therefore reject it.[4]  Also, this expert was retained before entry of the guilty plea, as counsel sought extensions of the trial date so that this expert could examine Defendant's computer.

C.  *The Claim That Counsel Was Ineffective in Not Moving to Suppress the Evidence Seized From Defendant's House*

Defendant's second claim is that counsel was ineffective in failing to file a motion to suppress the evidence seized from Defendant's house.  Defendant argues the search warrant violated the Fourth Amendment in the following ways: (1) the warrant was defective because it named the address of the place to be searched as being in

---

[3]   In his fifth claim, Defendant argues that the professionals he consulted after the search of his house would have shown that Defendant lacked the criminal intent to commit the offenses charged.  However, Defendant does not elaborate on what he means by criminal intent.

[4]   As part of this claim, Defendant alleges counsel was ineffective in other ways.  Defendant avers counsel failed to follow instructions, conduct an investigation, interview witnesses, develop a defense strategy, file requested motions, or have a competency examination performed on Defendant.  (Doc. 93, ECF p. 5).  Instead, counsel insisted that Defendant plead guilty.  (*Id.*, pp. 5-6).
As to the failure to file certain motions and to seek a competency examination, those are the subject of separate claims dealt with below.  On the other claims, counsel did investigate; as Defendant himself admits, counsel obtained the prosecution's file.  (Doc. 93, ECF p.5).  He also retained defense experts.  Defendant also does not say what defense strategy should have been developed and what witnesses should have been interviewed.  Vague and conclusory allegations are insufficient for a section 2255 motion.  *United States v. Thomas*, 221 F.2d 430, 437 (3d Cir. 2000).

Jonestown Borough when Defendant's residence was in Swatara Township; (2) the

application for the warrant stated that an internet account in Defendant's name was

accessing the internet from locations in Jonestown Borough when Defendant never

accessed the internet from that Borough or used a computer or had property in

Jonestown Borough; (3) police lied or acted recklessly by asserting on the warrant

application that Defendant had said in January 2006 that his residence was in Jonestown

Borough when Defendant actually said his residence was in Mount Carmel Borough;  (4)

the warrant's description of the residence to be searched was not a description of his

residence; (5) the Pennsylvania magisterial district judge who approved the warrant failed

to act in a neutral and detached manner because of the nature of the charges; and (6)

the warrant application lacked a showing of probable cause.

Defendant's first argument lacks merit, and to show that we must address

the fourth argument at this time.  The fourth argument is that the warrant's description of

the residence to be searched was not a description of Defendant's residence.  The

warrant described Defendant's house as follows: "Wooden ranch style home with tan

vinyl siding, green shutters and door with an exposed garage undernieth (sic) the

residence known as 30 Middle Avenue, Jonestown, PA 17038, Jonestown Borough,

Lebanon County."  (Doc. 107-1, ECF p. 9, search warrant and application).  Defendant

says this description is wrong by comparing it to a description apparently made by a real

estate company for the purpose of selling the house.  We will not quote the latter

description.  (Doc. 111, ECF p. 2 ¶ G).  It naturally provides greater detail than the

description in the warrant, but the latter description is consistent with the warrant's -- both describe a ranch-style house with tan (or taupe) siding, green shutters, and a garage underneath (or at street level).  We thus disagree with Defendant that the warrant description is not of the same house.

Returning to the first argument, we note that Defendant concedes that 30 Middle Avenue is correct, but argues that the reference to Jonestown Borough is improper because his residence is physically in Swatara Township.  In opposition, the government points out that, while Defendant's residence may be in Swatara Township, the warrant used Jonestown Borough because Jonestown is his mailing address, and the use of the mailing address was proper because it would lead to the residence.

We agree with the government.  The Fourth Amendment requires that warrants particularly describe the place to be searched, but "'it is enough if the description is such that the officer with a search warrant can, with reasonable effort ascertain and identify the place intended.'"  *United States v. Bedford*, 519 F.2d 650, 655 (3d Cir. 1975)(quoting *Steele v. United States*, 267 U.S. 498, 503, 45 S.Ct. 414, 416, 69 L.Ed. 757 (1925)).  "'The standard . . . is one of practical accuracy rather than technical nicety.'"  *Id.* (quoted case omitted).  *See also United States v. May*, 87 F. App'x 223, 226 (3d Cir. 2003)(nonprecedential).

It is thus unnecessary for a warrant to provide the geographical location of the place to be searched if the description is otherwise sufficient to identify that place. Here, the mailing address was probably sufficient by itself as it would lead to Defendant's

residence, regardless of whether the house was physically in Swatara Township.  In any event, the warrant also adequately described the house and provided Defendant's name as the owner or occupier.  (Doc. 107-1, ECF p. 9).  In these circumstances, Defendant's first argument fails.  *See United States v. Biles*, 100 F. App'x 484, 490-91 (6th Cir. 2004)(nonprecedential)(search warrant that named the wrong city and placed the house on the wrong part of the street was not invalid when it adequately described the house, named the house's owner, and sufficiently described the location of the house relative to other landmarks).

Defendant's second argument can be disposed of on the basis that it is factually inaccurate.  Defendant argues the application for the warrant stated that an internet account in Defendant's name was accessing the internet from locations in Jonestown Borough when Defendant never accessed the internet from that Borough or used a computer or had property in Jonestown Borough.  However, a review of the warrant application shows that it makes no such allegation, only that the computer with the child pornography on it could be traced back to Defendant's Middle Avenue mailing address in Jonestown.  This argument is just a variation on Defendant's meritless argument that the warrant had to identify the actual municipality of the residence.

In his third argument, Defendant asserts the police lied or acted recklessly by alleging on the warrant application that Defendant had said in January 2006 that his residence was in Jonestown Borough when Defendant actually said his residence was in Mount Carmel Borough.  According to Defendant, the allegation concerning Defendant's

residence arose from a January 2006 conversation Defendant had with a Pennsylvania State Trooper about obtaining a lethal-weapons certificate.  (Doc. 11, ECF p. 3). Defendant represents that during this conversation he said his address was in Mount Carmel Borough, although he "also maintain[ed] a second home nearby where my family is right now . . . ."  (*Id.*).  In the affidavit of probable cause, the affiant officer "verified that Blaine R. Handerhan lives at 30 Middle Avenue, Jonestown, PA 17038 when he responded to the State Police barracks in Jonestown on 01-16-2006 for fingerprinting relative to a Private Investigators License he was applying for."  (*Id.*).

A defendant can "challenge the truthfulness of factual statements made in an affidavit of probable cause supporting a warrant . . . ."  *United States v. Yusuf*, 461 F.3d 374, 383 (3d Cir. 2006).  If the affidavit contains a false statement that was knowingly or recklessly made, the defendant must still show that the statement was material to the original showing of probable cause.  *Id.*

In light of this standard, Defendant's third argument lacks merit.  As the government argues, even if we assume Defendant can show that the statement was false and made knowingly or recklessly, the rest of the affidavit is sufficient to establish probable cause.  The affidavit affirms that a detective from Delaware County, Pennsylvania, was able to download child pornography by way of a file-sharing program from a computer with a particular IP address.  Further investigation with the internet service provider revealed that Blaine R. Handerhan with an address at 30 Middle Avenue, Jonestown, Pennsylvania, was the customer with that IP address.  The white

pages telephone directory also indicated that Defendant was at that street address. (Doc. 107-1, ECF p. 21).  This is sufficient probable cause absent the allegation that the affiant had verified that Defendant lived at the Middle Avenue address.

It follows from the above analysis that Defendant's sixth argument, that the warrant application lacked probable cause, is meritless.  We also conclude there is no basis to contend that the Pennsylvania magisterial district judge who approved the warrant failed to act in a neutral and detached manner.

Based on the foregoing, counsel could not have been ineffective in not challenging the search warrant as there were no viable grounds for doing so.

> D. *The Claim that Counsel Was Ineffective in Failing to File a Motion to Suppress Statements Defendant Allegedly Made in Violation of His* Miranda *Rights*

Defendant's third claim is that counsel was ineffective in failing to file a motion to suppress statements he allegedly made after he was taken into custody during the search of his residence when police did not give him his *Miranda* rights.[5]  Defendant asserts that a suppression motion had a reasonable probability of success and if the statements had been suppressed, he would have had a reasonable probability of success at trial.

Defendant denies that he made any statements and does not specify what the statements were.  However, at the guilty-plea colloquy, in the course of outlining the

---

[5]     *Miranda v. Arizona*, 384 U.S.436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

-11-

government's case against him, the prosecutor did refer to certain statements Defendant supposedly made, "statements about his life being over, killing himself, and praying to find an answer to his dilemma . . . ." (Doc. 88, ECF p. 9, transcript of guilty-plea colloquy).  The prosecutor said the statements "were construed as admissions of his knowledge of the illegal acts."  (*Id.*).

We reject Defendant's claim for the following reasons.  First, he only vaguely asserts that there is a reasonable probability he would have prevailed at trial if the statements had been suppressed.  He does not provide the facts that would support such a claim.  Vague and conclusory allegations are insufficient for a section 2255 motion.  *United States v. Thomas*, 221 F.2d 430, 437 (3d Cir. 2000); *Johnson v. United States*, 294 F. App'x 709, 710 (3d Cir. 2008)(nonprecedential).  Second, Defendant has the burden in postconviction proceedings of showing he is entitled to relief, *United States v. Eakman*, 378 F.3d 294, 302 (3d Cir. 2004), and he does not meet that burden with conclusional assertions that the case had a reasonable probability of being resolved in his favor.

In contrast, as the government argues, its case rested upon forensic evidence gathered from Defendant's computer.  As noted by the prosecutor at the guilty-plea colloquy in reciting the case against Defendant, the case arose from an undercover investigation being conducted by a Delaware County police detective who downloaded child pornography from a computer the State Police later determined was at Defendant's 30 Middle Avenue address.  After a search conducted pursuant to the warrant discussed

above, the computer was seized.  Examination of the computer revealed 2,995 images of child pornography.  (Doc. 88, ECF pp. 8-9).

Moreover, at the sentencing hearing, although the distribution count had been dropped as part of the plea bargain, the prosecutor noted that the government had evidence that Defendant was distributing child pornography, that there were "specific file settings on his computer to set up that distribution program . . . ."  (Doc. 87, ECF pp. 14-15).

Defendant has presented no factual allegations that if his alleged statements were suppressed, there was a reasonable probability the outcome would have been different.  Hence the government correctly argues that this ineffectiveness claim fails for lack of prejudice.

D.  *The Claim of a Delay in Prosecution and a Failure to Provide a Speedy Trial*

Defendant's fourth claim is that counsel was ineffective in failing to file a motion to dismiss the indictment on the bases of delay in bringing the prosecution and on a violation of the Speedy Trial Act.  In support, Defendant asserts that he was arrested on February 6, 2006, but was not indicted until October 13, 2010, only days before the five-year statute of limitations would have expired, as the offense occurred on October 19, 2005.  Defendant asserts the pre-indictment delay prevented him from preparing a defense as the passage of time would hinder witnesses' ability to recall and there was a potential loss of evidence and testimony.  In his reply brief, Defendant cites cases dealing

with the Sixth Amendment right to a speedy trial: *Dillingham v. United States*, 423 U.S. 64, 96 S.Ct. 303, 46 L.Ed.2d 205 (1975); and *United States v. Battis*, 589 F.3d 673 (3d Cir. 2009). So it appears that Defendant is presenting three theories of relief on his fourth claim: (1) the Sixth Amendment right to a speedy trial; (2) the Speedy Trial Act; and (3) a due process right against oppressive pre-indictment delay.

1. *The Sixth Amendment Speedy Trial Right*

We begin with the Sixth Amendment. Defendant claims his constitutional right to a speedy trial was violated because he was arrested on February 6, 2006, but was not indicted until October 13, 2010, and did not plead guilty until October 5, 2011. Citing *Battis*, he contends this delay, totaling overall about sixty-eight months, was presumptively prejudicial and required dismissal of the indictment. His counsel was therefore ineffective in not raising this argument.

Defendant asserts that he was arrested on February 6, 2006, but that may not be true. Certainly, the Pennsylvania State Police executed the search warrant at his residence on that date. (Doc. 107-1, ECF p. 25). And Defendant was taken into custody at that time (and transported to a hospital) (Doc. 93, ECF p. 13), but it might have been because he was a danger to himself (*id.*), not because he had been arrested.

The date of arrest is important because it generally starts the time running on a Sixth Amendment speedy trial claim. *See Dillingham*, 423 U.S. at 65, 96 S.Ct. at 304. However, that is not the case here as any arrest would have been by state

-14-

authorities.  In these circumstances, the date of the arrest is immaterial, and the speedy trial claim begins to run from the date of the federal indictment.  *Battis*, 589 F.3d at 679.

Four factors are considered on a constitutional speedy trial claim: "the length of delay, reason for the delay, extent to which the defendant asserted his speedy trial right, and the prejudice suffered by the defendant."  *Id.* at 678 (citing *Barker v. Wingo*, 407 U.S. 514, 530, 92 S.Ct. 2182, 2192, 33 L.Ed.2d 101 (1972)).  "None of these factors is 'either a necessary or sufficient condition,' and the factors 'must be considered together with such other circumstances as may be relevant.'"  *Id.* (quoting *Barker*, 407 U.S. at 533, 92 S.Ct. at 2193).

Here, Defendant was indicted on October 13, 2010, and originally scheduled for trial on January 10, 2011, but with various postponements the last scheduled trial date was October 11, 2011, a delay of about twelve months.  If the delay is relatively brief, we need not consider the other factors  *Battis*, 589 F.3d at 678.  The Third Circuit has said that a delay of just fourteen months requires a look at the other factors, *id.*, so we  turn to those now.  *See also United States v. Velazquez*, 749 F.3d 161, 174 (3d Cir. 2014)(noting the observation in *United States v. Doggett*, 505 U.S. 647, 652 n.1, 112 S.Ct. 2686, 2691 n.1, 120 L.Ed.2d 520 (1992), that the lower federal courts have generally found that delay approaching one year triggers review of the other *Barker* factors).

Generally, if the government's conduct is the reason for the delay, this factor works in favor of the defendant.  Conversely, if the defendant's conduct is the

reason, this factor works against the defendant.  *United States v. Claxton*, ____ F.3d ___,

____, 2014 WL 4056561, at *9 (3d Cir. 2014).  The reason for the delay does not favor

Defendant as the case was postponed several times upon his own motion.  On

December 9, 2010, counsel moved for a continuance so that he could examine the

discovery from the government and prepare for trial.  (Doc. 14).  On April 4, 2011,

counsel moved for a continuance because the parties were trying to resolve the case

short of a trial.  (Doc. 18).  On June 6, 2011, counsel moved for a continuance so that he

could retain an expert to examine the computer equipment, have the expert examine the

equipment, and then prepare a report.  (Doc. 22).  On July 27, 2011, counsel moved for a

continuance so that the computer expert could conduct further testing, noting that the

expert had already reviewed the computer and had provided a tentative opinion.  (Doc.

27).  On September 7, 2011, counsel moved for a continuance, mentioning plea

negotiations and a conflict his expert had with a September trial date.  He also mentioned

the agreement of the government with the motion.  (Doc. 29).

On this factor, Defendant argues the reason for the delay was an attempt

by his counsel and the prosecutor to allow them to continue to pressure him into giving

up his right to trial by jury by pleading guilty.  (Doc. 110, ECF p. 5).  We reject this

contention.  Defendant did not present a claim contesting the validity of his guilty plea; he

did not assert the plea was not voluntary, knowing or intelligent.  He did argue the plea

was not knowing or voluntary, but only in his reply brief and only in response to the

government's argument that his claims of ineffective assistance of counsel in regard to

the search of his residence and his Miranda rights were waived by his guilty plea.  (Doc. 104, ECF p. 2).

In any event, Defendant's argument lacks merit.  He contends his plea was not knowing or voluntary because it was coerced in two ways; first, by his counsel's "total failure to actively advocate the defendant's cause;" and, second, by the prosecution's "threat of bail revocation and jail."  (*Id*.).  The argument lacks merit because Defendant does not tell us how his counsel failed to actively advocate his cause and because the threat of bail revocation would not cause a defendant to plead guilty; it would instead provoke the opposite reaction as a guilty plea would increase the risk of incarceration. Further, the prosecutor could not unilaterally revoke bail.

We turn to the third factor, whether Defendant ever asserted his speedy trial right.  This factor does not favor Defendant.  First, he never asserted in court his right to a speedy trial.  Second, while he claims that he instructed his attorney immediately upon retaining him to seek dismissal of the indictment because of the five-year delay after the offense occurred, this would not have been valid reason for seeking dismissal under the Sixth Amendment.  As noted above, under the Sixth Amendment, delay is calculated from the date of the indictment to trial, so at the time Defendant allegedly asked his lawyer to move to have the indictment dismissed, there was no delay the lawyer could have argued as a basis for dismissal.

The fourth factor does not favor Defendant either as he has suffered no prejudice from the delay.  In his reply brief, Defendant argues there is presumptive

prejudice from the length of the delay.  Excessive delay creates a presumption of prejudice.  *Claxton*, *supra*, ____ F.3d at ___, 2014 WL 4056561, at *11, and if Defendant were correct that the delay was sixty-eight months, then the presumption would apply. *Id.* (observing that five years could be excessive delay when coupled with negligent government conduct).  However, Defendant's calculation is erroneous, as it is based on the time from when state troopers searched his residence (February 2006) until the guilty plea (October 2011).  As noted above, for Sixth Amendment purposes, the time here is calculated from the date of the indictment until the scheduled trial (or guilty plea), a period of about twelve months.  That is not excessive delay and cannot support a presumption of prejudice.  *Id.* (noting that a period of fourteen and one-half months was not excessive so as to create a presumption of prejudice).

        In his 2255 motion, Defendant alleges specific prejudice.  First, the delay affected his ability to recall and reconstruct events and created the potential that witness recollection would be impaired and that evidence and testimony would be lost.  Second, Defendant relies on the anxiety and depression he felt after the February 2006 search.

        In part, prejudice can be shown by anxiety and concern about the pending trial or by showing that the defense was impaired by the delay.  *Battis*, 589 F.3d at 682. Defendant cannot establish prejudice from anxiety and concern about the pending trial as no trial was pending until after the indictment was filed in October 2010.  Neither can he establish prejudice from an impaired defense.  He does not point to any specific evidence

or testimony that was lost by the delay.  And as the government points out, the evidence was preserved on his computer.

We therefore conclude that counsel was not ineffective for not filing a motion to dismiss on the basis of Defendant's Sixth Amendment right to a speedy trial as such a motion would not have succeeded.  We turn to Defendant's claim based on the Speedy Trial Act.

### 2.  *The Speedy Trial Act*

The Speedy Trial Act, 18 U.S.C. § 3161-3174, requires in part that a criminal case be tried within seventy days of the filing of the indictment.  18 U.S.C. § 3161(c)(1).  Certain periods of time are excluded from the seventy-day period.  In this case, defense counsel moved for extensions of the trial date.  See Docs. 14, 18, 22, 27, and 29.  Those motions were granted, and the time properly excluded under the Speedy Trial Act.  18 U.S.C. § 3161(h)(7)(A).  There was no Speedy Trial Act violation here, and thus counsel was not ineffective for not filing a motion to dismiss under the Speedy Trial Act.

### 3.  *Pre-Indictment Delay Under the Due Process Clause*

A defendant can make a claim under the Due Process Clause for pre-indictment delay "only if he can show both (1) that the delay between the crime and the federal indictment actually prejudiced his defense; and (2) that the government deliberately delayed bringing the indictment in order to obtain an improper tactical

advantage or to harass him." *United States v. Beckett*, 208 F.3d 140, 150-51 (3d Cir. 2000).

As noted above, Defendant has failed to show prejudice from the timing of the indictment.  That alone defeats the due process claim.  Additionally, while Defendant asserts the government acted intentionally to obtain an improper tactical advantage, he provides us with no facts to support that contention.  There was no due process violation here, and thus counsel was not ineffective for not filing a motion to dismiss based on pre-indictment delay.

> E.  *The Claim that Counsel Was Ineffective in Not Investigating*
>     *Whether Defendant's Mental Illness Prevented Him From*
>     *Being Able to Form the Necessary Criminal Intent*

Defendant's fifth claim is that counsel was ineffective in not investigating whether his mental illness prevented him from being able to knowingly or intentionally form the criminal intent necessary to commit the charged offenses.  In support, Defendant maintains that after his February 2006 arrest, he sought professional help.  In doing so, the mental-health professionals he consulted concluded, in pertinent part,  that he suffered from obsessive compulsive disorder that caused him to download all types of material from the internet and to hoard all types of files, pornographic and non-pornographic alike.  Additionally, none of the experts found that he was a pedophile or suffered from paraphilia.  In Defendant's view, this evidence would have shown that Defendant lacked the criminal intent to commit the charged offenses.  He also believes the evidence was material because the government allegedly decided to reverse course

and allow the use of mental-health evidence at sentencing, when it had objected to the use of this evidence at trial.

We reject this argument.  As we noted above in regard to Defendant's first claim, these reports indicate Defendant admits he knowingly downloaded and hence possessed child pornography.  Additionally, even if Defendant is correct that the government objected to the use of this mental-health evidence at trial, there would have been no contradiction with the government's not objecting to its use at sentencing.  As the government's sentencing memorandum shows, its use at sentencing was proper under U.S.S.G. § 5H1.3.

> F.  *The Claim that Counsel Was Ineffective in Misleading Defendant Into Agreeing to Restitution When Restitution May Not Have Been an Element of the Crime*

Defendant's sixth claim is that counsel was ineffective in misleading him "into agreeing to restitution when restitution may not have been an element of the crime." (Doc. 110, ECF p. 2).  Defendant alleges that counsel never advised him "that restitution was an element of the penalty" for his offense.  (*Id.*).  We reject this argument.

As the government points out, Defendant executed a written plea agreement.  The agreement contains the following pertinent provisions.  First, in paragraph 14, captioned "Mandatory Restitution Act," Defendant acknowledged that "pursuant to the Mandatory Restitution Act . . . the Court is required in all instances to order full restitution to all victims for the losses whose victims have suffered as a result of defendant's conduct."  (Doc. 41, plea agreement ¶ 14).  Paragraph 14 continued: "The

defendant further agrees that, as part of the sentence in this matter, the defendant shall be responsible for making payment of this restitution in full . . . ." Second, in paragraph 15, Defendant acknowledged that the court would "determine the appropriate restitution . . . for identifiable victims in the images of child pornography." (*Id.*, ¶ 15).

Defendant asserts he never reviewed the plea agreement, but he signed the agreement under a paragraph stating: "I have read this agreement and carefully reviewed every part of it with my attorney.  I fully understand it and I voluntarily agree to it." (Id., p. 27).  His attorney also signed it under a paragraph stating: "I am the defendant's counsel.  I have carefully reviewed every part of this agreement with the defendant.  To my knowledge my client's decision to enter into this agreement is an informed and voluntary one." *Id.*

In any event, as the government argues, restitution was discussed at the guilty-plea hearing.  At the hearing, the prosecutor reviewed the terms of the written plea agreement.  Among those terms was Defendant's agreement "to pay whatever restitution is ordered by the court under the Mandatory Victim Restitution Act." (Doc. 88, ECF p. 3). Further, contrary to his representation now that he had not reviewed the written agreement, Defendant told the court that he had read it, and understood it. (*Id.*, ECF p. 4).  Defendant pled guilty. (*Id.*, ECF p. 11).

We therefore reject Defendant's claim that counsel was ineffective for failing to advise him about restitution.  We add that if Defendant is also complaining about the amount of restitution, he does not aver facts indicating that counsel was ineffective in

advising him on the amount as counsel had informed him about significantly higher amounts of restitution that could be imposed.  (Doc. 110, ECF p. 2).[6]

### G.  *The Claim that Counsel Was Ineffective in Failing*
### *to Argue that Defendant Was Incompetent to Stand Trial*

Defendant's seventh claim is that counsel was ineffective in failing to argue that Defendant was incompetent to assist in his own defense, stand trial, or enter a guilty plea.  "A defendant has a due process right not to be tried while incompetent."  *Jermyn v. Horn*, 266 F.3d 257, 283 (3d Cir. 2001)(cited cases omitted).  "To be competent to stand trial, a defendant must have 'a sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding' and must possess 'a rational as well as factual understanding of the proceedings against him.'"  *Id.* (quoted cases omitted).

We reject Defendant's argument because there is no evidence to show that he was incompetent to consult with his attorney or stand trial.

Defendant relies on the pretrial release order that recognized he may need psychiatric treatment.  (Doc. 11-2, ECF p. 2).  He also relies on our sentencing order that required him as an additional condition of supervised release to undergo a mental-health evaluation and if recommended, complete a program of mental-health treatment.  (Doc. 77, ECF p. 4, condition 6).  However, as the government argues, while Defendant had mental-health problems, he was not incompetent to stand trial.

---

[6]  We also disagree with any claim that counsel was ineffective during sentencing. (Doc. 11, ECF p. 2).

First, the mental-health professionals he consulted with after the search of his residence in February 2006 do not support his claim.  As noted above, in pertinent part, these professionals concluded that he suffered from obsessive compulsive disorder that caused him to download all types of material from the internet and to hoard all types of files, pornographic and non-pornographic alike.  These opinions do not show that Defendant was incompetent.

Second, Defendant's 2255 motion itself defeats his claim.  The motion alleges that at his first meeting with Attorney Gover in October 2010 Defendant had "made [his] intentions perfectly clear" and that he "wanted a jury trial as soon as possible."  (Doc. 92, ECF p. 5).  The motion also alleges that at a December 2010 meeting with Gover, Defendant instructed Gover to conduct an investigation, interview witnesses, develop a defense strategy, file requested motions, and have a competency examination performed on Defendant.  (Doc. 93, ECF p. 5).  Defendant described the motions he wanted filed: (1) a motion to contest the legality of the search warrant and the evidence obtained; (2) a motion to suppress statements he allegedly made in violation of *Miranda*; and (3) a motion to dismiss the indictment due to a delay in prosecution.  (*Id.*).  When Defendant discovered in an April 2011 meeting with Gover that he had not followed his instructions, he told Gover to "fix" it.  (*Id.*).  Finally, at a meeting before sentencing, Defendant raised matters with Attorney Perry that he wanted covered at the sentencing.  (*Id.*, ECF p. 7).  In the face of these allegations made by Defendant himself,

we reject his claim that counsel was ineffective in not raising the issue of his competency to stand trial.

III.   *Conclusion*

       Having considered all of the claims, we will issue an order denying the 2255 motion.  The order will also deny a certificate of appealability, based on the analysis in this memorandum.  However, Defendant is advised that he has the right for sixty (60) days to appeal our order denying his 2255 motion, *see* 28 U.S.C. § 2253(a), and that our denial of a certificate of appealability does not prevent him from doing so, as long as he also seeks a certificate of appealability from the court of appeals.  *See* Federal Rule of Appellate Procedure 22.

<u>/s/William W. Caldwell</u>
William W. Caldwell
United States District Judge

Date: September 23, 2014